[L. A. No. 12468. In Bank.—December 31, 1930.]

RAY L. SMITH, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Ray L. Smith, *in pro. per.*, for Petitioner.

George S. Dennison and Philbrick McCoy for The State Bar of California.

THE COURT.—The petitioner herein has applied to this court for a review of the findings and decision of the Board of Governors of The State Bar of California recommending the suspension of this petitioner from practice as an attorney and counselor at law in this state for the period of fifteen months. Upon the filing of said application an order was duly made requiring the certification of the record of the

proceedings before the Board of Governors of The State Bar to this court, and this having been done and the matter having been argued it has been submitted to us for decision.

On or about the eighteenth day of December, 1929, the Los Angeles Bar Association presented to the local administrative committee of The State Bar of California four separate complaints against the petitioner herein, charging him with various acts of professional misconduct and violations of the rules and regulations of The State Bar of California having reference to the professional conduct of the members thereof. In each of these complaints reference was made to a particular case in which the unprofessional acts and conduct charged against the accused were alleged to have occurred. These cases are referred to in the record transmitted to us as the "Benanti", "Taylor", "Grubb" and "Pena" cases. These are the names of persons who were parties plaintiff in the several personal damage actions in the course and conduct of which the petitioner's professional misconduct is asserted. Upon the presentation of the aforesaid accusations the petitioner was duly served with orders to show cause as to each before the local administrative committee of The State Bar; and on or about January 3, 1930, he appeared and filed his answers as to each of these accusations. In each of his said answers he specifically denied the commission of any acts of professional misconduct with respect to his engagement and professional services in each and all of said cases. The matter came on for consideration before the local administrative committee of The State Bar, which held several hearings thereon, in the course of which considerable testimony was educed, and at the conclusion of which the said committee, on February 17, 1930, made and filed with the Board of Governors of The State Bar its findings and conclusions recommending that the accused be disbarred. Upon consideration of the matter as thus presented to the Board of Governors the latter body, on April 19, 1930, adopted a resolution disagreeing in certain respects, to be hereinafter noted, with the findings of its local administrative committee, but recommending to the Supreme Court of California that the accused be suspended for the period of fifteen months, accompanying the same, however, with a further resolution, "That the Board is largely influ-

enced in not recommending a longer suspension or disbarment by the comparative youth and inexperience of the accused". Having been formally notified of the aforesaid action of the Board of Bar Governors on May 10, 1930, the petitioner in due time presented to this court his application for a review of the foregoing proceedings and the recommendation based thereon of the Board of Bar Governors of The State Bar as above set forth.

The facts of this matter as the same were developed at the hearing before the aforesaid committee of The State Bar may be summarized as follows: The petitioner, Raymond Lester Smith, was born on September 14, 1904, in Detroit, Michigan, and grew up in that region. He was educated in the grammar schools of Youngstown, Ohio, attended Michigan University for a year, taking the academic courses, studied law in Southwestern University, graduating in 1927, when he came to California and shortly thereafter took the law examination and was admitted to practice in October, 1927. He was then of the age of twenty-three. His father was a retired lawyer, who had not sought to be admitted to California. The young man began with desk room in the office of another attorney and became one of the large and increasing list of young attorneys in search of a practice. Shortly thereafter he happened to meet a man named Lauden whom he had known several years before, and who, while living in Cleveland, Ohio, had been engaged in the business of a licensed adjuster and who had recently come to California to engage in the same business, which, according to the frank admission both of himself and of the petitioner herein, was that of an "Ambulance Chaser". Upon arriving in California Lauden adopted the fictitious name and style of "The Prudence Service Company", and seems to have filed and published the certificate required under the provisions of section 2466 et seq. of the Civil Code, of those persons or partnerships seeking to do business under fictitious names. He opened offices under that pretentious title and apparently had several assistants of the class commonly known as "chasers". He required the services of an attorney, and meeting this rather immature and inexperienced young lawyer, offered him the alluring retainer of $250 a month to become the regular attorney for

"The Prudence Service Company". He seems to have told the young man that he had a license to do business as an "adjuster", although neither of them apparently knew of the existence of section 633 (e) of the Political Code providing for the licensing of adjusters of a certain sort, but which section of the Political Code has no relation or application to the business, if it be such, of "ambulance chasing". The young man was glad to receive this assurance of a regular livelihood and opened law offices of his own. His duties apparently were those of giving legal advice when required to his immediate employer, Lauden, or his assistants; to receive statements of the facts with regard to such damage cases as Lauden and his corps of assistants had procured through prompt interviews with persons injured, chiefly in automobile accidents, and from whom they had been able to obtain contracts authorizing The Prudence Service Company to undertake the settlement of the claims of such persons for damages, or to bring suits on their behalf in the courts for recovery upon such claims. The Prudence Service Company had quite an elaborate printed contract defining the terms of its employment, providing for a fifty per cent contingent fee in the event of compromise or recovery in a legal action and authorizing the company to employ attorneys to represent the claimant in the event such suits were to be brought and prosecuted. The only fee, however, which young Smith was to receive for his legal services in any event was the sum of $250 a month from The Prudence Service Company. When a "case" was sent up to his office with its accompanying memoranda he drew the complaint and other papers required for the institution of the action, sent them to the office of the "Company" and had nothing further to do with the matter until the action having been filed under his name as attorney of record therein, he was supposed to assume charge of the case, interview for the first time the plaintiff and witnesses and prepare for the trial of the case. The business prospered. Sometimes, as the record discloses, the young lawyer would be required to prepare as many as ten complaints in a single day. Many of these were never filed, the matters involved therein having been settled by the "Company", in which instances the lawyer heard nothing more of the case.

Matters went on in this wise for a year or so, in the ·course of which the four cases above referred to arose and were finally selected by the Los Angeles Bar Association to form the gravamen of these four separate accusations to be laid before the local administrative committee of The State Bar. In the meantime rumbles of a growing agitation against the business of ambulance chasing and against the unethical practices of attorneys directly or individually engaged therein began to penetrate the understanding of the petitioner herein. He went, in the month of September, 1929, to attend the annual session of The State Bar held at Del Monte, where the subject was fully discussed and where he very definitely learned that the sort of connection which he had been sustaining toward the business of ambulance chasing constituted a violation of certain rules of professional behavior which had already been promulgated by the Board of Governors of The State Bar. Smith came back from said meeting to Los Angeles and very shortly thereafter began severing his relations with Lauden and The Prudence Service Company. Early in October, 1929, he addressed a letter to Lauden notifying him that beginning with January, 1930, he must obtain another lawyer; that between the date of said letter and January he (Smith) would not prepare or file any more personal injury complaints, but would only take care of such cases as had been commenced prior to his trip to Monterey. The petitioner appears to have carried out his purpose as outlined in his said letter and ceased thenceforth accepting from Lauden or The Prudence Service Company, or from others, any ambulance chasing cases. The four cases referred to in the accusations against him were each and all cases which had arisen prior to October, 1929, and in each of which, with one exception, the petitioner's activities or participation had terminated prior to October, 1929. Referring to these four cases more specifically, the evidence taken before the administrative committee discloses, that as to the Benanti case the accident in which Mrs. Benanti's minor son was injured, occurred July 15, 1929. Lauden, either directly or through one of his agents, solicited the case and procured from Mrs. Benanti her signature to one of the contracts of The Prudence Service Company. A complaint was prepared by the

petitioner herein upon the statement of the case sent him by the company, but without any meeting or previous interview with the client, and which complaint was sent to the office of The Prudence Service Company for verification and filing and for the issuance of a summons thereon which, when issued and served, was to be returned to the office of the petitioner. This complaint was filed but never served, for the reason that two or three days thereafter Mrs. Benanti wrote a letter to The Prudence Service Company requesting it to withdraw from the case and that another attorney named Irving be substituted in place of the petitioner in the case, which substitution was sent to the petitioner's office and signed and he heard nothing more about the case until the service of the accusation of the Bar Association upon him. It appears, however, that there were certain irregularities in the verification of the complaint before filing, the name of Mrs. Benanti having been forged thereto, but of this the petitioner asserts that he knew nothing, but the administrative committee made a finding upon evidence which seems to us to be quite insufficient that the petitioner filed the complaint in the Benanti case knowing that the verification and signature of Mrs. Benanti thereto had been forged. In the Taylor case the accident occurred on February 19, 1929. A day or two later Mr. Lauden solicited her case and offered her a contract which she signed. The petitioner prepared a complaint in this case also without having seen Mrs. Taylor and which was sent to the company for verification and filing and which complaint was filed but not served. A few days later a settlement was made by the company acting on behalf of Mrs. Taylor for the sum of $100, of which she received $54, which was satisfactory to her, and the case was dismissed. It was claimed upon the hearing that there were some irregularities as to the verification of the complaint in this case also, but the administrative committee made a finding upon no sufficient evidence whatever that the petitioner had filed the complaint in the Taylor case knowing that Mrs. Taylor's verification and signature thereto were forgeries. In the Grubb case, when the witnesses were about to be called before the administrative committee the petitioner offered a stipulation to the effect that this case was

also solicited by The Prudence Service Company and was referred to the petitioner as in the other cases, and that a complaint was prepared by him and subsequently filed by the company, and that the case came on for hearing before the superior court, at which time the petitioner appeared representing the plaintiff, whereupon a settlement was made and approved by the court and the case dismissed. In the Pena case the accident occurred to Mrs. Pena on July 5, 1929. The case was solicited by one of the agents of Lauden or The Prudence Service Company on the following day, when the usual contract was signed. The petitioner prepared the complaint in the customary way and the same was filed on July 12, 1929, and no settlement having been made the case was still pending trial at the time of the hearing before the administrative committee. Some effort was made at the hearing to show that the verification in this case was also forged, but the committee made no specific finding upon the subject. With respect to the above several falsifications and forgeries as to the verifications of the complaints in the foregoing cases it was made to appear that there was a man named Raspon in the employ of The Prudence Service Company as an ambulance chaser and that it was probably this man who wrote the names of the several plaintiffs to the verifications of these complaints and who procured a complaisant notary to affix his certificate thereto. Raspon at the time of the hearing had disappeared. The petitioner denied in each instance that he knew of or had participated in Raspon's nefarious acts and conduct in the foregoing regard, and the evidence fairly considered fails to fix a stigma upon the petitioner in the foregoing regard. The main gravamen of the several accusations against the petitioner and of the affidavits offered in support thereof consist in the charge and proof that a year or so prior to the filing of the charges against him by and on behalf of the Los Angeles Bar Association he had accepted regular employment from Lauden, doing business under the fictitious name of The Prudence Service Company, knowing him to have formerly been and to being then engaged in the business of soliciting damage cases as an ambulance chaser; and to have during the year succeeding his said employment prepared complaints and other papers for filing in such cases without seeing or consulting

with the parties on whose behalf actions were to be brought, or having any other relation to or contact with such parties than that resulting from his agreement to act as an attorney representing The Prudence Service Company for a specified monthly retainer. The petitioner freely admitted and now and here admits the truth of these accusations and offers in defense or rather in mitigation thereof that at the time he accepted employment from The Prudence Service Company, knowing that its main business activities were those of soliciting employment as adjusters of damages in accident cases through the means of what has come in common parlance to be known as ''ambulance chasing'', he honestly believed the same. to be a legitimate employment; that his monthly retainer therein was honestly and fully earned, and that he continued in such belief until he attended the annual meeting of The State Bar held at Del Monte in September, 1929, and there and in the discussions held thereat he first came to realize that his relations with the aforesaid ambulance-chasing institution and with the persons operating under the name thereof were being frowned upon as unethical by the organized bar of California, and that upon returning from said convention he took immediate steps to sever such relation and had practically done so prior to the presentation of the aforesaid accusations against him.

Upon the conclusion of the hearing before the local administrative committee of The State Bar certain findings of fact were made and filed by that body, accompanying the recommendation of three of its five members that the petitioner should be disbarred. The committee found that it was not true that the accused had employed either Lauden or The Prudence Service Company to solicit or obtain professional employment for him, and that the accused had not remunerated either of the above parties for soliciting and obtaining professional employment for him. The committee further found that it was not true that the accused had shared with any unlicensed person or persons compensation arising out of or as an incident to his professional services and conduct, and that it was not true that the accused had aided or abetted an unlicensed person or persons to practice law or to receive compensation therefrom. The committee, however. found that it was true that the accused had know-

ingly accepted professional employment on behalf of the several claimants in personal injury cases whose names are above set forth, and which employment was offered to him as a result of or as an incident to the activities of an unlicensed person, who for compensation controlled, directed or influenced such employment. The foregoing findings of the committee relate to the alleged violation by the accused of rule III of the Rules of Professional Conduct by the Board of Bar Governors of The State Bar and approved by the Supreme Court of California on May 24, 1928. The committee further found that the accused had been guilty of violating rule X thereof, which provides that "a member of The State Bar shall not advise the commencement, prosecution or defense of a case unless he has been consulted in reference thereto, except when his relation to a party or a subject matter is such as to make it proper for him so to do". The specific respect in which the accused was alleged and found to have violated this rule of professional conduct consisted in the fact that he had in the four instances above stated prepared the pleadings and other papers for the commencement of an action on behalf of each without having seen or consulted with the respective parties for whom he was to appear as attorney of record in the actions to be commenced and which were actually commenced on behalf of each of these. As to the other findings which the aforesaid committee made herein we are satisfied from a careful examination of the record that they are not sufficiently sustained by the evidence, and that the gravamen of the case against the accused herein consists in the extent to which the committee found him to have been guilty of violating rules III and X. The petitioner upon his hearing before the committee and also upon his final hearing before the Board of Bar Governors of The State Bar freely admitted his violation of these rules, but pleaded his youth, ignorance and inexperience in extenuation thereof, and also pleaded and showed that when upon his attendance at the Del Monte convention his eyes had been opened to the extent of his offending, he had immediately severed his connection with his former employer Lauden or The Prudence Service Company, refusing as early as October, 1929, to accept any

more ambulance-chasing cases, and only retaining his connection with such actions as had actually been commenced until such time as these should be concluded, or as the parties interested therein could secure other counsel.

In finally passing upon this matter the Board of Bar Governors, while disagreeing with certain of the findings of its committee which were favorable to the accused, concluded to recommend a suspension of the petitioner for the period of fifteen months, basing their action in so doing and in thus softening the harsher recommendation of the administrative committee upon "the comparative youth and inexperience of the accused". We are of the opinion that the Board of Bar Governors might well have taken into consideration in fixing the aforesaid penalty that this was a test case, being one of the first cases of like character brought before said board for investigation and involving as it did the activities of ambulance chasers and the ethical relation and duties of members of the legal profession toward those who, not being themselves licensed attorneys, were largely engaging in that sort of discredited but apparently lucrative occupation; and that the said board might well also have considered in mitigation of the penalty to be imposed upon this petitioner that he had, apparently in good faith and some months prior to the accusations made against him, severed his connection with his ambulance-chasing employer and practically ended his connection with the cases concerning which specifically these accusations have been made.

Under the foregoing circumstances we are disposed to the view that this young man has been sufficiently disciplined, and having voluntarily suspended himself from the active practice of the law as of the date March 1, 1930, in conformity with the recommendation of the Board of Bar Governors of The State Bar; it is therefore hereby ordered that the period of his suspension as recommended by the Board of Governors of The State Bar be so far shortened as to expire on January 1, 1931; and that said Ray L. Smith shall be and he is hereby, as of the date of January 1, 1931, restored to the position of attorney and counselor at law of and in the state of California, and to full membership in The State Bar of California, subject to the rules and regulations of that body.

LANGDON, J., Dissenting.—I dissent. I am in accord with the majority opinion, except as to the judgment therein pronounced. The appropriate judgment, based on that opinion, is a dismissal of all charges against petitioner.

Upon the record, no other judgment seems warranted. This young man committed no crime and this court so holds. Nevertheless, a local administrative committee of The State Bar stigmatized him as a criminal and recommended his disbarment. The Board of Governors of The State Bar disapproved the local committee's report and reduced the punishment to suspension for fifteen months. Of the fifteen members of the board, only eight signed the order; two members dissented and five were either absent or did not vote. This court disapproves the recommendation of the board and further reduces the suspension to nine months; but its judgment nevertheless leaves the stain of suspension upon his record.

Does the punishment fit the offense? It is based on violations of rules III and X of the Rules of Professional Conduct of The State Bar. No moral turpitude confronts us in this case. The most that can be urged against petitioner is an unfortunate association and an error in judgment and interpretation on a question which has been highly debatable. With reference to rule III, in a situation akin to this, The State Bar Committee on legal ethics ruled that the conduct complained of here was not improper. This ruling was later withdrawn, but the point is that if the elders of the bar were perplexed by this ethical problem, is it not unreasonable to hold a mere fledgling in the law to a correct interpretation at his peril? With reference to rule X, on advising the commencement of actions without being consulted in reference thereto, petitioner believed that in dealing with his employer, Lauden, as the agent of the plaintiffs, he was well within the rule. While this rule is a salutary one, its strict provisions have been honored more in the breach than in the observance in many of the larger offices of this state. It is said to be a not uncommon practice for lawyers for banks, trust companies, insurance companies, automobile associations, and as correspondents of foreign attorneys, to prepare and file papers without direct contact with parties in interest. I do not condone this procedure, but, judging

from petitioner's attitude as disclosed by the record, if his attention had been called to these irregularities in his conduct, he would have promptly discontinued them. A mere suggestion of change in practice would have been sufficient. But no intimation or warning was ever given to this young man by any member or officer of The State Bar that his activities were questionable.

Both the board and this court have overlooked or disregarded the really important feature of this case. The outstanding constructive accomplishment of The State Bar since its organization, which in itself is sufficient to justify the experiment of a self-governing bar, is the corrective influence it has had over its membership through educational methods alone. Smith attended the Del Monte meeting of The State Bar. He heard there a denunciation of activities similar to those in which he had been engaged. Immediately upon his return, he announced to his employer that he would accept no more cases from him, but would only dispose of the unfinished business. Thereafter, he completely severed his relations with Lauden, relinquishing a salary of $250 per month. No charge had been made against him, but he voluntarily discontinued a profitable employment. To some of us this action may seem commonplace, but to this struggling young lawyer it meant starting anew. To the practitioner who can look back to the starvation period of the beginner, the action of this young man appears highly commendable. If, through education, The State Bar can induce its members voluntarily to clean house, its disciplinary powers need seldom be invoked. They were not called for in this case. Their purpose had already been fully achieved by this courageous step which petitioner had taken. We should not ignore this significant act. No parallel situation has yet been presented to this court.

There can be no justification for tarnishing this young man's name by a disciplinary judgment unless it may serve to help him or others. He needed no help; he had voluntarily abandoned the activities which were frowned upon. With ten thousand lawyers in this state, and with ambulance chasing in one form or another a familiar practice for at least the last quarter of a century, this youth less than two years admitted to the bar,, was made the subject of a

test case. I think that he is an unfortunate victim of the war against ambulance chasing, a war that must go on until the practice is eliminated, but, in this campaign, the guns might first be trained on the giants, instead of the pigmies. I agree with the majority that the petitioner has been sufficiently punished; but I think that justice can only be done by dismissing the charges and clearing his name.

Curtis, J., concurred.