[L. A. No. 12251. In Bank.—July 31, 1931.]

JAMES W. BARBEE, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

James W. Barbee, *in pro. per.*, for Appellant.

Walter J. Little and Philbrick McCoy for Respondent.

THE COURT.—This is a petition to review a recommendation of the board of governors of The State Bar that petitioner be suspended from the practice of the law for a period of one year. The proceeding was commenced before local administrative committee No. 6, in Los Angeles County, and resulted in a recommendation of disbarment, which was reduced to suspension by order of the board of governors.

Petitioner was tried on three accusations. In the Burns case, the complainant, Mrs. Michael Burns, made charges based upon an action against her husband brought by Walker Collection Service Company, in which petitioner acted as attorney for said husband. Burns later directed petitioner to settle the case, and agreed to pay him a fee of $15. Petitioner negotiated the settlement, and over a considerable period of time received remittances in small sums from his client to be paid over to the adverse party. The committee found that petitioner withheld the sum of $78.50 for some time before finally remitting to the collection company. The committee also found that "at the time respondent was handling said case of Walker's Collection Service Company against complainant, respondent was handling two other matters for complainant, in which he was making certain payments on behalf of complainant, for report on title, for street assessments, and other items of minor importance. The evidence as to whether or not complainant furnished the money to respondent with which to make these last mentioned payments is conflicting, but the committee finds that the evidence preponderates in favor of complainant . . . " We are not sure that we agree with this statement of the weight of the evidence, but irrespective of this, the complainant admitted, and the committee found that petitioner was representing Mr. and Mrs. Burns in several matters, and handling their accounts with several creditors. His explanation of the delay in making payments is that he was acting in their interests in spreading the small payments received among the various claimants. The whole case appears to us to be a dispute over accounting methods, and perhaps the evidence establishes laxity on the part of petitioner in handling the money. But we find little in the record to justify the conclusion that he

deliberately withheld the sum of $78.50, intending to appropriate it to his own use. Indeed, it plainly appears that he performed continuous services for the parties without adequate compensation and that he became a guarantor for Mr. Burns on a note for $100 evidencing a loan obtained from The Morris Plan Company. There is also in the record the testimony of John B. Stirk, manager of the collection company, that petitioner had personally guaranteed the payment of the balance of the account at a time when there was owing $150.25; that he had so informed Mr. and Mrs. Burns; and that in reliance upon the personal assurance of petitioner, he had released a garnishment which had been levied upon the wages of Mr. Burns. On the whole, we are inclined to the view that the evidence in this case is insufficient to justify the findings and order.

The McDaniels case grew out of a divorce action brought by Mrs. Pearl McDaniels against her husband, in which petitioner represented her. It appears she paid him $50 in advance with the understanding that if he were able to collect the whole of an agreed fee of $150 from the defendant, he would return the $50 to her. Petitioner secured a settlement in which she was to receive certain property and $350, and he was to receive $250 for his fees and $15 additional for his costs. Thereafter she demanded that he return the $50, which he failed to do until after the commencement of this proceeding. Petitioner's explanation is that she had agreed to accept a settlement of $300 and the property; that he had negotiated such a settlement; that thereafter he had made further overtures to the attorney for the defendant to raise the additional sum of $50 to cover the part of his fee advanced to him, and that this was finally accomplished. On this point petitioner is corroborated by the testimony of the husband's attorney. Hence, he contends, the $50 was really returned to Mrs. McDaniels when he turned over to her the sum of $350 instead of $300 which she had agreed to take and which he had secured for her. With respect to the fee of $250, it appears from Mrs. McDaniels' testimony that she acquiesced in this charge, and petitioner states that the original figure of $150 was quoted for a simple action involving no alimony or property settlement. No such acquiescence is shown as to the item of $50, for when the matter was presented to Mrs.

McDaniels she took the papers under consideration, and a few days later demanded the return of the money. In the meantime she had become reconciled to her husband. Again we may concede that petitioner's conduct is subject to criticism. Without doubt he should have obtained her consent prior to the agreement with counsel for the adverse party, and lacking that consent, should have remitted to her the entire amount apparently received in settlement of the action. But in this case also the record does not satisfactorily establish an intent to defraud. Petitioner was, we believe, stubbornly but honestly mistaken in his understanding of his rights in the matter. We are not prepared to hold that such a dispute over the fixing of a fee is ground for the drastic punishment inflicted by the order herein.

The third case was one in which petitioner was engaged by Mrs. Francis Slates to institute a proceeding before the Industrial Accident Commission to recover for herself and minor child an award for the death of her husband. The commission made an award of $3,410.40, out of which it directed that the sum of $100 be paid to petitioner and another as attorney's fees. Payments on account of the award were made to petitioner from time to time, from which he deducted the specified fee and the additional sum of $150 for additional services. The committee found that this additional sum was wrongfully deducted and that he also withheld sums at various times and for various periods. Ultimately all the money claimed was paid over to complainant. Petitioner presents an explanation for each of the acts criticised. The additional fee was charged, he claims, for additional services in attempting to collect the award from a somewhat recalcitrant debtor. Some of the delays in payments are accounted for by the fact that checks paid to petitioner by the other party to the proceeding were dishonored, and were collected only after considerable effort. Petitioner also testified that Mrs. Slates was desirous of keeping the money away from her husband and that he withheld money with her consent. In this he is corroborated by Mrs. Henigan, Mrs. Slates' aunt, who testified that Mrs. Slates was having trouble with her husband, and intended to secure a divorce; that Mrs. Slates asked petitioner to prepare the papers for such an action; and that

she told petitioner not to tell her husband how much money was available, and not to pay the bulk of the sum collected until after the parties were separated. Petitioner testified further that Mrs. Slates expressed herself as being satisfied with his charge of $150 for special services, and in this he is also corroborated by Mrs. Henigan. Mrs. Slates herself stated in response to a question of petitioner that she had made no complaint about this sum as long as he had continued to work on the matter of collections. On the essential issues, the evidence in this case is conflicting. We should not hesitate to condemn the exaction of a fee in excess of that allowed by the commission, which act would be in violation of the law; but there is testimony in the record to support petitioner's contention that it was a separate charge for the separate services involved in collection, in which Mrs. Slates had acquiesced. With respect to the claim of withholding the money to keep it from her husband, petitioner's testimony is fully corroborated by that of Mrs. Henigan.

It seems unfortunate that in these matters, assuming petitioner's testimony to be true, he failed to keep sufficient records and accounts, and relied upon oral agreements and understandings as a foundation for his various claims and his acts. As we have already stated, his conduct is subject to criticism and disapproval. Nevertheless, our reading of the whole record leaves us without the firm conviction that his moral turpitude is established. We think that the committee has in its findings magnified his errors somewhat, and that his conduct does not call for the severe penalty meted out to him. Moreover, petitioner presented numerous letters from judges, lawyers and business men of the community in which he practiced, which testified to his good character and reputation. An additional fact of some significance is a long period of practice in the courts of this state without any complaints of this nature ever having been made. For the acts herein considered, however, some penalty is deserved, and we are of the opinion that suspension for a period of three months would be adequate.

It is therefore ordered that petitioner be suspended from the practice of law in all courts of this state for a period of three months, said suspension to become effective thirty days from the service of notice of the within order, said service to be made upon him by the clerk of this court by means of the United States registered mail.