[L. A. No. 21916. In Bank. Feb. 1, 1952.]

JOHN L. FLEMING, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

342

John W. Preston for Petitioner.

John S. Chapman and Jerold E. Weil for Respondent.

THE COURT.—The Board of Governors of The State Bar adopted the recommendation of the local administrative committee that petitioner be suspended from the practice of law for a period of two years because of unprofessional conduct, moral turpitude and dishonesty in connection with a guardianship matter. Petitioner seeks review of the board's decision. The proceeding presents no question of law, but only the question whether, after weighing the evidence, we should follow the board's recommendation.

We have examined the entire record in the light of the established rules that the findings and recommendation of the local committee and the board of governors, although entitled to great weight, are not binding upon us (*Light* v. *State Bar*, 14 Cal.2d 328, 336 [94 P.2d 35]); that we can weigh conflicting evidence (*Furman* v. *State Bar*, 12 Cal.2d 212, 214 [83 P.2d 12]) and can impose discipline other than that recommended if the recommendation is disproportionate to the misconduct (*Barton* v. *State Bar*, 213 Cal. 186, 190 [2 P.2d 149]) or not warranted because of other mitigating circumstances (*Egan* v. *State Bar*, 10 Cal.2d 458, 462 [75 P.2d 67]; *Barbee* v. *State Bar*, 213 Cal. 296, 300 [2 P.2d 353];

*Smith* v. *State Bar*, 211 Cal. 249, 258 [294 P. 1057, 73 A.L.R. 393]).

Petitioner, now 74 years of age, was admitted to practice in 1900. He has no previous disciplinary record with The State Bar. Petitioner does not contend that he did not indulge in the course of conduct hereinafter described, but argues that such conduct, in the light of all the facts shown, does not establish moral turpitude and was not in violation of his duties as an attorney, and that, at worst, he was "somewhat careless."

In February, 1947, Marguerite Miller caused her mother, Lila Landon, to be placed in the psychopathic ward of the Los Angeles General Hospital. Mrs. Landon was a widow more than 70 years of age. Petitioner had represented Mrs. Landon on previous occasions, but had not been employed by or seen her for several years; she had, however, telephoned to him on one or more occasions, and had tried to contact him on other occasions but had been prevented by her daughter from so doing. At her request he was present and aided her at the psychopathic hearing on February 28, 1947. The trial judge, after hearing evidence, stated that in his opinion Mrs. Landon should go to a sanitarium, but because of her insistence he released her into the temporary custody of petitioner. What, if any, further action was taken in the psychopathic proceeding does not appear.

Also on February 28, 1947, Mrs. Landon signed a will which had been prepared by petitioner's law partner and which left all her property to petitioner. The will was signed by her immediately after the psychopathic hearing, in the corridor leading from the hearing room, not in the presence of petitioner but in the presence of petitioner's law partner. Several months after the psychopathic hearing Mrs. Landon employed independent counsel to prepare, and she executed, a second will likewise substantially in petitioner's favor. Although petitioner did not know of this transaction at the time, he thereafter learned that the will in his favor existed.

Mrs. Landon's principal property was an apartment house which, in 1944, she had placed in the names of herself and her daughter as joint tenants. It was valued at about $44,000 and encumbered by a mortgage or trust deed for $15,000 on which a balance of $14,545.36, payable at $119 a month, was due at the time involved. On February 28 she executed a quitclaim deed of this property to petitioner, and a few days

later he executed a quitclaim deed of the property to her. The object of this exchange of deeds was to convert the joint tenancy to a tenancy in common, as part of a plan to raise money for Mrs. Landon's immediate needs.

On March 3, 1947, at Mrs. Landon's request, petitioner sought appointment as guardian of her person and estate. Mrs. Miller filed a counterpetition asking that she be appointed guardian. Her petition was denied and petitioner was appointed guardian. Thereafter he collected the income from the property and used it for Mrs. Landon's benefit; he also advanced her substantial sums from his personal funds.

On April 28, 1947, at the request of Mrs. Landon, petitioner as guardian filed a complaint to set aside the joint tenancy deed which Mrs. Landon had executed in 1944, and to recover any interest claimed by Mrs. Miller, on the ground that such deed had been obtained by the fraud and undue influence of Mrs. Miller. Mrs. Miller took the position that she had used her own funds to care for her mother and that this was the consideration for the deed. After negotiations with Mrs. Miller and her counsel the action was compromised in January, 1948, on terms hereinafter described.

In October, 1947, Mrs. Landon broke her hip and her necessary expenses and pressing need for funds increased. At her request petitioner, as guardian, filed in the guardianship proceeding a petition to borrow $5,000 to be secured by a second trust deed on her half interest in the apartment house property.

On December 29, 1947, petitioner filed in the guardianship proceeding a petition to compromise the action to set aside the joint tenancy. Under the compromise agreed upon, petitioner's wife, Olga R. Fleming, was to purchase Mrs. Miller's interest in the property for $4,000. The petition stated that Mrs. Fleming "has agreed that the entire net income from said real property, or so much thereof as is necessary, shall be applied to the support of said LILA C. LANDON during her lifetime." There is no evidence that this agreement was not faithfully performed during the time that Mrs. Fleming held the property and (as hereinafter stated in more detail) when a sale of the property was arranged by petitioner and approved by the court, Mrs. Fleming, upon repayment of the amounts due her, conveyed her entire interest to Mrs. Landon.

The petition to compromise the Miller action and the petition to borrow $5,000 were heard on January 19, 1948. At the hearing the following took place: "Mr. Fleming: . . . In

order to compromise that lawsuit, . . . my wife, with Mrs. Landon's consent and approval, is buying the daughter's whatever interest she has in this property, buying it out for $4000, *subject to a life estate on the mother.* The Court: For what? Mr. Fleming: For $4000, subject to a life estate to the mother." (Italics added.) The court also approved the requested loan in the reduced amount of $2,500.[1] There was no discussion or statement as to who was to make the loan, but, as above indicated, it was stated that Mrs. Fleming was "buying the daughter's whatever interest she has." Because of the involved condition of the title (the outstanding first lien requiring payments of $119 a month on an unpaid balance of $14,545.36 and Mrs. Landon's limited interest) there was difficulty in procuring the loan and at Mrs. Landon's request Mrs. Fleming made such loan and became beneficiary under the second trust deed.

The compromise of the action against Mrs. Miller was consummated about January 30, 1948. Under its terms Mrs. Fleming paid Mrs. Miller $4,000; Mrs. Miller delivered to Mrs. Fleming a grant deed wherein the words "subject to a life estate in favor of LILA C. LANDON for the term of her natural life" had been typed in but stricken out by inked lines.[2] These words had been stricken at Mrs. Fleming's and petitioner's direction, and Mrs. Miller had initialled the amendment and signed the deed as thus amended, prior to the January 19 hearing. Mrs. Miller also executed an affidavit wherein she stated that "This Affidavit is made for the purpose

---

[1] The original tentative plan to borrow $5,000 had not contemplated the purchase of Mrs. Miller's interest in the property but had contemplated possible allocation to Mrs. Miller of a portion of the sum borrowed, and Mrs. Miller had signed a consent to such plan.

[2] It is not altogether clear what would have been the effect of the stricken phrase. The courts of this state (*Butler* v. *Gosling*, 130 Cal. 422, 426 [62 P. 596]; *Elliott* v. *McCombs*, 17 Cal.2d 23, 28 [109 P.2d 329]; *Mott* v. *Nardo*, 73 Cal.App.2d 159, 162 [166 P.2d 37]), like those of other jurisdictions (39 A.L.R. 129), have adhered to the feudal rule that an exception or reservation in favor of a stranger to a deed can create no interest in the stranger. But many courts have not applied this rule, and have effected the manifest intent of the parties to the deed, where the reservation or exception is in favor of a spouse. (*Boyer* v. *Murphy*, 202 Cal. 23, 33 [259 P. 38] [which recognizes the rule that a reservation to a stranger to the deed creates no estate, but says that by construing the language of reservation as an exception the grantor's intent can be effected]; 129 A.L.R. 1064.) Apparently, under the present state of the law, the striking out of the phrase did not affect Mrs. Landon's interest; if the phrase was a reservation the grantor's title would pass unqualified by such reservation; if it was an exception the life estate would not pass to the grantee, but neither would it pass to Mrs. Landon. (16 Am.Jur. 610.)

of inducing Olga R. Fleming to pay a consideration of $4000.00 to affiant upon execution and delivery of a Grant Deed conveying to Olga R. Fleming her aforesaid undivided one-half interest in said real property, and in consideration of such purchase by Olga R. Fleming and payment of said sum of $4000.00 therefor affiant agrees as follows:

"1. To execute any papers necessary hereafter in connection with extending or modifying the terms of said Deed of Trust held by Western Mortgage Corporation.

"2. To vacate on or before February 1st, 1948 the apartment now occupied by her at said premises, hereby agreeing that any tenancy or other right therein be deemed terminated on January 31st, 1947, and hereby waiving any defenses under State or Federal laws to an action for Unlawful Detainer or other proper action in the event that she fails to remove as aforesaid.

"3. John L. Fleming, husband of Olga R. Fleming, was on March 21st, 1947 appointed Guardian of the person and estate of said Lila C. Landon, and with the consent and agreement of affiant has been collecting the rents of the apartments at said premises 149 and 151 South Crescent Drive, Beverly Hills, and applying the same to the upkeep of said real property and expenses thereof, and to the maintenance of said Lila C. Landon, as will more fully appear in his First Annual Account as such Guardian. Affiant hereby releases any claim to such rents or any portion thereof.

"4. It is understood and agreed that the remaining undivided one-half interest in said real property is subject to proper testamentary disposition by said Lila C. Landon and there is an existing Will or Wills in and by which said Lila C. Landon gives said real property and other property owned by her or a substantial portion thereof to said John L. Fleming, under and by which affiant would take nothing. Affiant covenants and agrees in consideration of the matters hereinabove stated, and especially of the payment to her by Olga R. Fleming of $4000.00 upon delivery of the aforesaid Grant Deed, that she will not contest any properly executed Last Will and Testament of Lila C. Landon which leaves her estate or a substantial portion thereof to John L. Fleming, and hereby waives and renounces any right to contest the same either before or after the probate, either on the grounds of undue influence or incompetency, or any other grounds, reserving to herself all rights, however, as to any Will of Lila C. Landon

which does not leave a substantial portion of her estate to John L. Fleming.

"This Affidavit and the covenants and agreements contained therein are made for the purpose of inducing Olga R. Fleming to make the aforesaid purchase from affiant of her aforesaid undivided one-half interest in said real property."

Soon after the compromise was effected Mrs. Miller filed a complaint against petitioner with The State Bar. Petitioner continued to act as guardian. With the approval of the court, evidenced by its order, he sold the real property for $44,000. Mrs. Fleming then conveyed her interest in the property to Mrs. Landon upon payment of $4,000 and interest, and her note and trust deed were satisfied upon payment of $2,500; petitioner then resigned as guardian.

The board of governors concluded that petitioner violated his oath and duties as an attorney, and was guilty of moral turpitude and dishonesty, by wilfully misrepresenting to the probate court that the deed from Mrs. Miller to Mrs. Fleming gave a life estate to Mrs. Landon; and by dealing with the property of his client and ward in a manner calculated to serve his personal ends and enrich his wife. It further concluded that petitioner violated his oath by wilfully refusing to protect the interest of his client; by unnecessarily placing himself in a position where the interests of petitioner and his wife conflicted with those of Mrs. Landon; by failing to inform the court of the conflict of interest which arose because his wife was the proposed lender of the $2,500; and by exacting from Mrs. Miller the covenant (in the affidavit) not to contest any will leaving Mrs. Landon's estate to petitioner, in view of the fact that petitioner knew that Mrs. Landon had executed two such wills while her capacity was questionable.[3] Petitioner's conduct, the board found, was part of a deliberate plan to use his office as attorney for the profit of his wife and himself at the expense of Mrs. Landon and her heirs.

We have concluded that the weight of the evidence is against the inferences that petitioner was guilty of wilful wrongdoing designed to enrich himself and his wife at the expense of Mrs. Landon. It appears from the evidence as a whole, and particularly from the testimony of petitioner,

[3]It is to be noted that incompetency to the extent of needing a guardian does not necessarily imply incompetency to make a valid will (*In re Zanetti*, 34 Cal.2d 136, 141 [208 P.2d 657]).

his wife, and his law partner, that petitioner's dealings with Mrs. Landon were had at her urgent request and because of the immediate necessity of providing funds for her care, and for the purpose of protecting her from the apparent unkindness and machinations of her daughter. This testimony could not be confirmed or disputed by Mrs. Landon at the committee hearing because Mrs. Miller prevented her mother's appearance at the hearings on the disciplinary action. After Mrs. Miller testified against petitioner, petitioner's counsel asked where her mother could be reached for service of subpena. Mrs. Miller gave a fictitious address and the next day took her mother to Oregon.

Petitioner testified that his inaccurate statement[4] as to the life estate (*ante*, p. 345) was inadvertent and not intended to mislead the court or to gain advantage over Mrs. Landon. Adding credence to this testimony is the fact that the interest being purchased was the interest of Mrs. Miller—an interest held adversely to Mrs. Landon—and that the statement was made while the trial judge had before him the petition, which clearly stated the true interest in the property (the right to its "entire net income . . . or so much thereof as is necessary . . . to the support of said LILA C. LANDON during her lifetime") which Mrs. Fleming agreed that Mrs. Landon should have. Adding credence to the testimony of petitioner and his law partner that despite his advice and protests Mrs. Landon insisted on making a will in petitioner's favor is the fact

---

[4]Petitioner's statement to the court was: "[M]y wife, with Mrs. Landon's consent and approval, is buying the daughter's whatever interest she has in this property, buying it out for $4,000, subject to a life estate on the mother."

The statement in the petition then before the court was (after referring to negotiations for the settlement of the suit against the daughter): "That as a result of aforesaid negotiations between Petitioner and Marguerite M. Miller and Hugh Kelley her attorney in said action, it has been agreed, subject to the approval of the Court, as follows: Said Marguerite M. Miller will sell to Petitioner's wife, Olga R. Fleming, who is willing to purchase the same, her undivided one-half interest in said real property for $4000.00 cash and will vacate the apartment occupied by her in said premises on or before February 1st, 1948, thereby adding $50. a month to the income collectible [sic] from said real property; and Olga R. Fleming has agreed that the entire net income from said real property, or so much thereof as is necessary, shall be applied to the support of said LILA C. LANDON during her lifetime."

Petitioner's explanation to the hearing committee of the discrepancy between his oral statement to the court and the written statement in the petition is: "I failed to differentiate between a legal life estate and her right to have the income from the property during the rest of her natural life, which were the arrangements which everyone understood were to be made."

that thereafter Mrs. Landon, without the knowledge of petitioner, executed a will in his favor which had been prepared, at her direction, by independent counsel.

 Petitioner's conduct was unquestionably unwise and improper; it admits of suspicion as to his motives. An experienced member of The State Bar, having regard for the duties and responsibilities of his profession and the proprieties of professional relationship with his clients, should not, without further safeguards for both his client and himself, have permitted his personal interests to become so enmeshed with those of a client of the age and state of health of Mrs. Landon. We are of the view, however, that petitioner has met the burden of showing that he was not guilty of moral turpitude. The net result, the only ultimate result, of petitioner's acts, has been to benefit, not to prejudice, Mrs Landon. In the circumstances we feel that the punishment recommended by the board is disproportionately severe. We are satisfied that petitioner will be sufficiently punished, and will be sufficiently impressed with the impropriety of his conduct, if he is publicly reprimanded. This opinion shall constitute such reprimand.

EDMONDS, J.—The record in this case amply supports the finding of the Administrative Committee, adopted by the board of governors, that the petitioner dealt with the property of his client and ward for his and his wife's personal advantage and to the disadvantage of a woman of advanced years and questionable mental capacity whose interests he was bound to protect. More specifically, as stated by the board of governors, Fleming placed Mrs. Landon in a position where she would receive "So much and only so much . . . as respondent and his wife, in their uncontrolled discretion, might see fit to give her."

Considering these findings, in my opinion, the committee and the board of governors erred, if at all, on the side of leniency and the recommendation of suspension for two years should be upheld. It is of some significance that two members of the board of governors voted against the recommendation on the ground that the degree of discipline is insufficient.

Traynor, J., concurred.