DREW, Justice.
The respondent in this case was charged by The Florida Bar with having been guilty of the violation of Canons 27 and 28 of the Canons of Professional Ethics and Rule 19 of the Additional Rules Governing the Conduct of Attorneys in Florida, 31 F.S.A. in that he did, on February 6, 1964, in Putnam County, Florida, individually and through his agent, Walter M. Limbric, who was acting within the scope of his agency, actively solicit professional employment from Mrs. Ernest Lee Kaymore, Mrs. Obediah Mc-Caskell, Mrs. Richard Junior Hodges, Mrs. W. A. Johnson and Mrs. Aaron Woods to represent each of said persons or any one of them in connection with any claims for damages arising out of the wrongful death of their husbands on or about February 4, 1964. Respondent filed his answer to these charges and extensive hearings were conducted before the Honorable Davisson S. Dunlap, a referee appointed by this Court for the purpose of hearing complaints of the character here under consideration. These hearings consumed a good part of two days and the record here consists of some 280 pages of testimony. There is some conflict in the evidence but, under the Integration Rule, the referee is the officer of this Court responsible for reconciling such conflicts and making his findings of fact and recommendations therefrom. The pertinent portions of his findings and recommendations follow:
“After considering all of the pleadings, exhibits and evidence before me, I find that:
“1. On February 6, 1964, the respondent went to Palatka, Florida, accompanied by Robert Corley, a commercial photographer, to meet with Rev. Limbric, a bail bondsman and Negro preacher. The purpose of the meeting was to establish contact with certain widows living in Palatka, Florida, whose husbands had been killed in an accident on February 4, 1964, and to secure the legal representation for the respondent of the claims arising out of the accident.
“2. After a conference between the respondent and Rev. Limbric, a procedure *519 was set up by which W. M. Limbric would go to the widow’s respective homes and ascertain 'if they were 'all right to talk.’ If so, Rev. Limbric would find out if they wanted to retain the respondent’s services. If so, the respondent would be notified by Limbric and the respondent would enter the home of the widows and discuss his legal representation of the widow and the estate of their deceased husbands in respect to the claims arising from the accident. The respondent followed Rev. Limbric in his car as he went from place to place.
“3. At that time respondent did not know any of the decedents nor their widows. Rev. Limbric claims to have met one of the decedents, named Obediah McCaskell, on one occasion two years prior to the accident, but under the evidence it is extremely doubtful if his claim is valid. He did not claim to know or have met any of the other decedents or any of the widows.
“4. At the time Rev. Limbric went to the homes of the widows, he had in his possession professional cards of the respondent.
, “5. Pursuant to the procedure determined by the respondent and Rev. Lim-bric, W. M. Limbric went to the home of the mother-in-law of Blanch McCaskell to see Blanch McCaskell, and to see Irene Johnson, Mary Jane Hodges and Eula May Kaymore at their respective homes. On each occasion he ascertained if they would retain the respondent’s services and if the reply was in the affirmative, the respondent, who was outside in a car, was summoned by Limbric to talk with the widow as a prospective client. At one or more of the talks the respondent mentioned the case being worth $75,-000.00 to $85,000.00 to the widow.
“6. During the talk with Blanch Mc-Caskell the respondent asked her where the other widows lived so he could talk with them and take the whole case.
“7. The professional card of the respondent was given by Limbric to Irene Johnson and her father, Joe Williams, Sr. The respondent gave his professional card to Blanch McCaskell after first obtaining it from Limbric in the presence of the witness.
“8. As a result of the above procedure, a typewritten contingent fee contract was signed by Blanch McCaskell and Mary Jane Hodges retaining the respondent as their attorney in respect to the claims arising out of the accident which occurred on February 4, 1964. Respondent was unsuccessful in obtaining the representation of the other widows, namely, Irene Johnson and Eula May Kaymore.
“9. About a week after February 6, 1966, W. M. Limbric was given $50.00 by the respondent and he went down to Palatka and gave it to Blanch McCaskell and got her to sign a receipt. A short time later, Blanch McCaskell returned the $50.00 to the respondent.
“10. From the evidence it is apparent that:
“(a) The respondent solicited professional employment through Rev. Limbric acting as a touter for the respondent. The acts of touting performed by Rev. Limbric were done with the knowledge and acquiescence of the respondent.
“(b) The respondent solicited professional employment by personal communications and interviews not warranted by personal relations.
“(c) The respondent attempted to and did breed litigation by seeking out those with claims for personal injuries.
“ * * *

“RECOMMENDATION OF GUILT

“It is recommended that the respondent be found guilty as charged in the complaint, and particularly that he be found guilty of violation of Rule 11.02 of Ar- *520 tide XI of the Integration Rule, Canons 27 and 28 of the Canons of Professional Ethics and Rule 19 of the Additional Rules Governing Conduct of Attorneys in Florida.”
The Board of Governors concurred in the findings and recommendations of the referee and entered its judgment under the Integration Rule suspending the respondent from the practice of law for a period of six months and assessed against him the cost of the proceedings in the amount of $781.95.
Because of the nature of disciplinary proceedings under the Integration Rule and the power and responsibility vested in this Court under Article V, Section 23, of the Florida Constitution, F.S.A., to render the ultimate judgment in every case this Court has carefully considered the evidence which was presented and from it has determined that the conclusions reached by the referee, concurred in by the Board of Govex-nors, ai'e amply supported in the record and are hereby approved.
The thrust of respondent’s petition for review and the argument in his behalf is that the offense charged against him and of which he has been adjudged guilty is an isolated offense at most and that while respondent concedes he was not wholly free from fault, the punishment inflicted is excessive and should be reduced by this Court, citing in support of such contention State ex rel. The Florida Bar v. Murrell, Fla.1954, 74 So.2d 221; State ex rel. The Florida Bar v. Rubin, Fla.1962, 142 So.2d 65; State ex rel. The Florida Bar v. Graves, Fla.1963, 153 So.2d 297, and The Florida Bar v. King, Fla.1965, 174 So.2d 398. Respondent argues that the cases above cited establish the principle in this jurisdiction that for isolated acts of unethical conduct censure, public or private, is the appropriate punishment. While appropriate punishment under varying conditions was discussed in those cases, the cited cases stand for the proposition that the degree of punishment in each case where violations of Canons of Professional Ethics are involved depends entirely upon the factual situation presented by the record in that particular case. Over the years this Cotxrt has not found any areas of black and white as to the degree of punishment to be imposed in all cases. Rehabilitation as well as punishment is involved in every case. Such factors call upon the total experience of the Justices of this Court in determining the appropriate judgment in each instance. So far as the practice of solicitation of business is con-cei-ned, the views of this Court are adequately expressed in State ex rel. The Florida Bar v. Dawson, 111 So.2d 427, 431, where we said:
“This Court has condemned the practice of ambulance chasing through the media of runners and touters. In similar fashion we have with equal emphasis condemned the practice of direct solicitation by a lawyer. We have classified both offenses as serious breaches of the Canons of Ethics demanding severe treatment of the offending lawyer. State ex rel. Florida Bar v. Murrell, Fla.1954, 74 So.2d 221. The exact nature of the disciplinary action to be taken is a problem which must be resolved on the basis of the factual situation presented by each particular case. Smith v. State Bar of California, 211 Cal. 249, 294 P. 1057, 73 A.L.R. 393; State ex rel. Florida Bar v. Murrell, supra.”
The solicitation of business by members of The Bar, all of whom are officers of the Court, has been and is universally condemned. The Canons of Professional Ethics in emphatic terms denounce such conduct and the language used cannot be misunderstood by either the young and inexperienced or the old and experienced members of The Bar. By whatever means employed, solicitation of professional business is unethical and warrants the imposition of appropriate discipline.
In this era of high verdicts in negligence cases, the temptation is great to cut corners to get business but such actions *521 on the part of the Bar cannot and must not be tolerated. Under the Integration Rule it is a responsibility of the organized Bar to ferret out and bring to the attention of this Court infractions of this basic concept of professional conduct.
Upon consideration of the record in this cause, it is the judgment of this Court that the respondent, Alfred C. Scott, a member of The Florida Bar, be and he is hereby suspended from the practice of law in this State for a period of six months, such period to commence from the effective date of this decision. Judgment is hereby entered against the respondent, Alfred C. Scott, in the sum of $781.95 for costs in these proceedings, together with interest thereon from the effective date hereof at the lawful rate, for which let execution issue.
It is so ordered.
THORNAL, C. J., and O’CONNELL, CALDWELL and ERVIN, JJ., concur.