[L. A. No. 13945. In Bank.—April 21, 1933.]

WILLIAM G. ALLEN, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

20

Anthony Jurich for Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—Local administrative committee number eight, State Bar of California, in and for the county of Los Angeles, upon a hearing duly had, found that the petitioner, William G. Allen, had committed acts of gross moral turpitude and had violated his oath as an attorney and counselor at law, and basing its conclusions upon said findings recommended to the Board of Governors of The State Bar that he be disbarred and that his name be stricken from the roll of attorneys of the state of California. The Board of

Governors of The State Bar, on July 15, 1932, acting upon the findings of said local administrative committee approved and adopted the same as the findings of said Board of Governors, and recommended to this court that said William G. Allen be disbarred from the practice of the law in the state of California.

Petitioner was employed by Mrs. Anna Hoagard, wife of James W. Hoagard and an aged lady, who was injured in an automobile collision, to prosecute her claim against Melvin Pepper, a minor, and J. C. Ferguson, on account of personal injuries sustained by her as the result of the negligence of the two persons last named. James W. Hoagard, her husband, is totally blind in one eye and has but a small percentage of vision in the other eye. Judgment went for Mrs. Hoagard against said minor, Pepper, and Ferguson in the sum of $1500, and costs taxed at $49.

Approximately thirty days after the judgment was entered petitioner collected upon said judgment the sum of $500, and entered a partial satisfaction. Some five or six months thereafter petitioner collected the further sum of $750, and satisfied the judgment in full without the knowledge or consent of his client. She was in need of financial assistance and had repeatedly interviewed petitioner as to the unpaid balance, and upon each occasion he told her that it was not collectible, as the defendants had become bankrupt, and their estates were in the hands of a receiver. Mrs. Hoagard discovered some months thereafter that petitioner had collected an additional sum of $750 by a chance meeting with a person who had actual knowledge that two other persons who were injured in the same accident had been paid the amounts awarded to them under a similar judgment. She thereupon investigated the record and discovered that petitioner had satisfied in full the judgment rendered in her favor for the sum of $1549 upon payment to him of the sum of $1250. The whole of said sum of $750 had been appropriated to his own use in the manner herein related.

Petitioner claimed that his agreement, which was oral, allowed him forty-five per cent of the amount collected, while Mr. Hoagard, who made the agreement with petitioner, said that the understanding was that he was to receive forty per cent of the amount collected. That petitioner did not consult his client as to the advisability of satisfying her

judgment in the sum of $1500, plus $49 for costs, is not contradicted. The satisfaction of said judgment was kept from her by deliberate falsehoods which were the invention of petitioner's dissembling mind. Petitioner admitted that he had not informed either his client or her husband that he had collected said sum of $750, or that he at any time contemplated, or that there was any reason to seek, a compromise of said judgment. His conduct in this respect stands out absolutely indefensible. At the hearing he made a feeble attempt to justify himself in retaining all of the $750 payment by relating three other matters in which he claimed to render some indefinite service. One had to do with a quiet title action to 160 acres of land situate in Riverside County, in which Mrs. Hoagard had some interest. He claims to have written several letters for her, and held a telephone conversation with the party pressing the claim against her, and, according to his statement, by advising Mrs. Hoagard to pay $100, the litigation resulted favorably to her.

Mrs. Hoagard testified that in addition to giving him the $100 above mentioned, she was required to raise an additional sum of $160 for the advantage that came to her out of the transaction, whatever may have been its value or benefit, which is not mentioned. The petitioner was unable to give any positive information as to the transaction, and was uncertain as to whether the proceeding was an action to quiet title or foreclose a mortgage. It would seem most likely from Mrs. Hoagard's reference to the matter that an attachment had been levied on her property on account of her unpaid bills. His testimony shows very clearly that he performed no service that was more than a trifle in value, and he himself was really conscious that he had not performed any service worth making a charge for. He drew no pleadings, he did not appear in court, and just what convincing force his letters contained does not appear, as he made no attempt to produce them. This transaction occurred after he had collected and appropriated said sum of $750, and before his client had made the discovery of those facts. His client said that she mentioned the matter in a casual way and petitioner at once volunteered his services without cost. The second matter brought in as a defense was that petitioner upon one occasion furnished Mr. Hoa-

gard with a blank form prescribed by the state for persons making application for a pension for the blind. Hoagard denies that petitioner even furnished the blank, but petitioner admitted his services did not extend beyond furnishing said blank. Mr. Hoagard's application for a pension was denied.

The third service alleged to have been rendered by petitioner consisted of an effort made by Mrs. Hoagard to resist an order of cancellation by the government of a homestead entry of land in New Mexico made by her deceased son under the Veterans' Act. At the contest held at New Mexico the homestead entry was canceled. No opposition was pressed by Mrs. Hoagard, as she was informed by an experienced lawyer in such matters that the land was not worth the cost of the contest. Mrs. Hoagard also had had correspondence with a lawyer residing in New Mexico on the subject. Petitioner makes out a sorry case by his own statement. None of the attorneys were paid a fee. Indeed, it does not appear that any felt that he had earned a fee. Petitioner, in this transaction, as in the other two, had no contract of employment with Mrs. Hoagard, and had never rendered her a bill or in any way claimed that she was indebted to him for said services until after he was called to account in this proceeding by his client, and threatened with criminal prosecution by the district attorney of the county of Los Angeles. It was then that he tardily began to build up earned fees as an offset to the moneys he secretively obtained on a judgment and appropriated to himself without making a pretense of accounting to his client.

As a matter of fact when he first appeared before the local committee he said that all services outside of his fee in the negligence case would not exceed the sum of $20. An examination of the record will amply justify the above statement as to the value of said services. Early in the investigation of his conduct he stated that he had spent the money in taking his wife into Canada, as she was illegally in this country, and the government was about to deport her to England. At the hearing later he denied that he spent any part of said sum of $750 in transporting his wife to Canada, but admitted that immediately after he received said moneys he and his wife did go to Canada, and he returned ten days thereafter.

Petitioner presented nothing at the hearing before the local committee, nor does he present anything upon his petition to this court that would have a tendency to refute the charge placed against him or mitigate the punishment recommended by the Board of Bar Governors. He did not give any insight into his career as a lawyer, or as a member of society. We glean from the record that he is a native of the state of South Carolina and forty-two years of age, and that he was admitted to this bar on motion in 1919. The transcript of his registration card indicates that he last practiced law in the state of Nevada 1912–1918. Whether he was originally admitted to practice in Nevada does not appear, as he did not mention any other state of which he was a resident or a practicing attorney. His testimony is self-contradictory, is lacking in definiteness and frankness, shows faulty memory as to matters about which he should have entertained no doubt, and at times is incoherent. Upon several occasions he gave expression to the evil motives of the attorneys examining him, which were entirely unjustified by anything we are able to find in the record.

The following is a fair exemplar of his testimony upon being interrogated as to whether or not disbarment proceedings had ever been filed against him: "A. Not to my knowledge. Q. That is in this state or elsewhere? A. Elsewhere. Q. Now, how many years have you engaged in the active practice of law, and where? A. In the state of California only. Q. And is that for the last six and one-half years? A. Yes."

A few moments before petitioner had answered that he had not practiced for the last six years and a half, and stated that he was admitted in Palo Alto.

Upon criminal complaint being made to the district attorney of Los Angeles County, petitioner was summoned to that office to explain away the incriminatory appearance of his conduct. He admitted to the deputy district attorney who had the matter in charge that he had satisfied said $1500 judgment for $1250, and that he had spent the $750 paid him upon full satisfaction of said judgment. The deputy district attorney thereupon said to him, "You know what that means, Mr. Allen. It is a criminal offense, an embezzlement, a felony." Petitioner replied that he was fully aware of its legal effect, and asked if the deputy district attorney

would give him ten days to straighten the matter out. This request was granted by said officer, and the matter was kept open for some time during the pendency of the disbarment proceedings. A number of papers touching all the transactions herein mentioned were turned over to the district attorney. During the hearing before the local committee petitioner made frequent reference to the materiality of matters contained in said papers, and their importance in disproving the charge preferred against him. He was repeatedly requested by the local committee to produce them, and the committee offered its assistance if he should meet with difficulty in procuring them. The committee adjourned its session for a period of one week to a day certain to enable petitioner to procure the papers which he had repeatedly said were of great value to him in presenting his defense. Upon reconvening on the day fixed petitioner did not appear, and the proceedings were concluded in his absence. No attempt was made by him to produce said papers, which would have been of no value to his defense if they had been produced.

The evidence could leave no doubt in the mind of anyone reviewing it as to the moral breakdown of a person who has demeaned himself as petitioner has through a period of approximately three years in practicing deception, inventing falsehoods and making false and forged affidavits in order to put himself in a position where he could collect and appropriate to his own uses his client's portion of her judgment. Mrs. Hoagard related another experience she had with petitioner which tends to prove that petitioner should no longer remain a member of the bar.

To petitioner's closing brief, filed in this cause on December 9, 1932, is attached a canceled check in the sum of $412.50, payable to Mrs. Anna Hoagard, and indorsed by her as payment in full of the judgment. The drawer of the check is not petitioner, but one "H. S. Allen". The check is dated October 21, 1932, the day that petitioner filed his petition for review in this court. Said check, computed on a fifty-five per cent basis, equals Mrs. Hoagard's share of the unauthorized and secretly satisfied judgment. This check, although not the check of petitioner, coming as it does to us, can be regarded in no other light than another admission of the truth of the charges laid against him.

█ Two letters written by members of the bar of this state and addressed to this court are attached to the record, and forwarded to us for our consideration in reaching a conclusion herein. These letters, from the dates they bear, could not have been before the local administrative committee or Board of Bar Governors, whose findings we are here reviewing. Said letters do not disclose sufficient knowledge on the part of the writers of the character and legal career of the petitioner to have justified said authors in assuming to advise us in an *ex parte* fashion upon a matter of grave public importance. They come to us as mere hearsay evidence, which of itself should have been a sufficient reason to have deterred the writers from violating a cardinal rule of evidence. Said letters were intended as evidence tending to establish the good reputation of petitioner in the ranks of the profession. █ We do not mean to say that character evidence is not admissible in disbarment proceedings. Inasmuch as the charges are necessarily an attack upon the honesty and integrity of the accused, character evidence is in every case available as a defense. A long and honorable career at the bar may of itself, in the circumstances of a particular case, be sufficient, in the minds of the triers of fact, to outweigh the incriminatory effect of the evidence produced by the accusers. Good character, when satisfactorily established, is an important element in every disciplinary case as an aid to the court in determining the degree of punishment that may be proper in the circumstances of the cause presented. Such evidence, like all other kinds, is to be produced in the manner prescribed and sanctioned by the rules of evidence, to the end that the persons who would put the issue of character in the case may be fully cross-examined; and, further, that the testimony given upon that issue may be rebutted by counter-evidence. Strictly speaking, an attempt to influence a court's judgment on pending matters by writing letters to the judges who are to decide the cause is a contempt of court. We feel satisfied that the letters in the instant case were written without a due consideration of the duties which attorneys owe not only to courts, but also to the orderly administration of the law. We pass the incident without further comment in the hope that we will not be called upon again to make reference to a reprehensible practice.

The findings of the local administrative committee are fully sustained by the evidence, and the recommendation of the Board of Governors of The State Bar is hereby approved and adopted. It is therefore made the order of this court that petitioner William G. Allen be and he is hereby disbarred from practicing law in all of the courts of this state, and his name is stricken from the roll of attorneys of the state of California.