[S. F. No. 15314. In Bank.—July 1, 1935.]

ERNEST L. SEAVEY, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Wright, Monroe, Thomas & Glenn for Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—Proceeding to review action of the board of governors of The State Bar of California recommending disbarment of petitioner Ernest L. Seavey. It is charged that petitioner has committed acts involving moral turpitude and dishonesty in the course of his professional relations in that he has been guilty of a breach of trust and of the embezzlement of money entrusted to him. The local administrative committee before whom the charge was heard found that the "acts, doings and omissions of the accused in the premises, amount to a violation of the provisions of section 506 of the Penal Code of the state of California", and recommended his suspension from the practice of law for three years. Section 506 of the Penal Code provides that, "Every . . . attorney . . . or other person otherwise entrusted with or having in his control property for the use of any other person, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust . . . is guilty of embezzlement." The board of bar governors approved and adopted the findings of fact of the local administrative committee, but recommended that petitioner be disbarred from the practice of law.

The order to show cause was predicated upon the claim that a sum of money amounting to $4,720.75 came into the hands of petitioner in the settling up of a partnership business and

that he knowingly failed and neglected to keep the money in a trust account subject to the disposition of the proper owners separate from his personal account, and upon demand of the partners refused to pay over said money to them or either of them. This charge is substantiated by the evidence adduced at the hearing. Petitioner does not dispute that the following facts are true: Petitioner, as an attorney, drew up the papers of dissolution of a partnership in a rock-crushing business consisting of H. B. Bulmer and John T. Murphy, whereby Murphy turned over to Bulmer all of the partnership property to handle and dispose of as his own, but with the provision that as between the parties the interest in the partnership property owned by Murphy should be held in trust by Bulmer until a proper division of the proceeds was made either by agreement or lawsuit. The provisions of the agreement relative to this phase of the dissolution of the partnership are as follows: ''7. It is the express intent of the parties hereto that this agreement shall be interpreted as follows: (a) In any questions arising between either or both parties hereto and any third party, the property hereby transferred and conveyed by second party [Murphy] to the first party [Bulmer] shall be held and construed to be the sole and exclusive property of first party, with the absolute right to sell and transfer, mortgage, pledge or otherwise deal with the same free from any claim by second party. (b) In any question arising between the parties hereto the interest of second party in the partnership property hereby conveyed to first party shall be deemed to be held in trust for second party, but subject, nevertheless, to the provisions of the preceding section (a) hereof. . . . '' Petitioner having prepared the contract, was, of course, conversant with the terms thereof. Thereafter Bulmer sold the partnership property to the Spreckels Commercial Company for the total sum of $45,000. Of this amount $15,000 was to be paid upon delivery of possession and the balance to be paid in instalments. Before the final payment was made the Spreckels Commercial Company became bankrupt and thereafter the claim against Spreckels Commercial Company was compromised for a sum equal to 50 per cent thereof, and the sum of $4,720.75 was paid over to petitioner in full settlement. In the meantime, Murphy had filed an action in the Superior Court of San Diego County to recover the amount due to him from Bulmer

under the terms of the dissolution agreement. On April 28, 1931, the day after petitioner received the sum of $4,720.75, the attorney for Murphy caused to be served on petitioner an *alias* writ of attachment, but petitioner failed to make any return to this attachment. On the same day, after the receipt of the money, petitioner loaned to one Arbuckle the sum of $3,275. In making the loan, petitioner took Arbuckle's sixty-day note payable to H. B. Bulmer and wife in the sum of $3,275, but instead of actually paying this amount of money over to Arbuckle, he credited Arbuckle with the amount, making a suitable entry on his ledger. At the time Arbuckle was indebted to petitioner in the sum of $1994.57. Thereafter and up to June 27, 1932, petitioner continued to advance to Arbuckle various sums of money aggregating in all $2,469.79. Petitioner took from Arbuckle as security some mining stock and a deed to certain unimproved property in Berkeley, title to which had never been of record in Arbuckle's name. In fact, the value of the security taken was so questionable as to be practically worthless as security for the payment of the Arbuckle note. On November 30, 1932, judgment was entered in the lawsuit in favor of Murphy against Bulmer in the sum of $4,082.44, together with $106 costs. On December 12, 1932, a writ of execution was issued and served on petitioner, but he failed to make any answer to the writ.

Petitioner's defense is based upon the claim that the money received from the Spreckels Commercial Company by him was money belonging to H. B. Bulmer and not to the partnership and that although he had no direct authority from Bulmer to make the loan to Arbuckle he had transacted business for Bulmer in the past and was honestly under the impression that he was acting within his authority and for the best interest of his client in making the loan to Arbuckle. Petitioner argues that while such action might create a civil liability against him on behalf of Bulmer, it ought not to furnish grounds for disciplinary action against him.

If we accept as true petitioner's contention that the money loaned by him was in fact the property of Bulmer and that the dissolution agreement between Bulmer and Murphy only created a debt in favor of Murphy against Bulmer for the value of Murphy's interest in the partnership property, the conduct of petitioner with reference to the loaning of the

money to Arbuckle was so reprehensible as to constitute good grounds for disciplinary action against him. The evidence clearly shows that although petitioner's account at the bank was designated as a trust account, it was the only account maintained by him, and was the account from which he withdrew funds for his own personal use. In so depositing the money petitioner violated that portion of rule 9 of Rules of Professional Conduct (213 Cal. cxv), which specifically states that "A member of the State Bar shall not commingle the money or other property of a client with his own." It is uncontradicted that petitioner never notified Bulmer of the receipt of the money by him from the Spreckels Commercial Company and the immediate loan of such money to Arbuckle but instead on June 12, 1931, wrote a letter to Bulmer in which he notified him that the money had been attached by Murphy "so we are tied up plenty for the time being". Petitioner, previous to this particular loan to Arbuckle had never been authorized to and had never made any loans for Bulmer, and the power of attorney given to petitioner to effect a compromise settlement with the Spreckels Commercial Company expressly gave petitioner power "to compromise and settle all claims made by one John T. Murphy, formerly a partner of the said H. B. Bulmer, and *out of the proceeds of any moneys collected* from said Spreckels Commercial Company *to pay the said demands* of said John T. Murphy as so compromised . . . '' Petitioner's claim that he secured express authorization to make this loan from Bulmer in a long distance telephone conversation with him in April is refuted by the fact that subsequent to the date of the claimed authorization he wrote a letter to Bulmer in which, instead of confirming the loan, he states, as above noted, that the money had been attached by the sheriff and "we are tied up plenty for the time being". It is incredible that if he had received authorization from Bulmer to make the loan and had honestly believed that he was acting for the best interest of his client in making the loan, he would have kept him in ignorance of the loan and have given him positive misinformation that the money was tied up by attachment and available to pay a judgment in favor of Murphy. It is significant that the note from Arbuckle to Bulmer was never turned over to Bulmer. Neither did he receive the security taken by petitioner for the payment of the note. In short, Bulmer

was kept in complete ignorance of petitioner's activities and only learned of the loan and the fact that the money was not available to pay Murphy's judgment from a third person. The above brief *résumé* of petitioner's dealings with his client, Mr. Bulmer, clearly demonstrates that his conduct was not characterized by that high standard of honesty, integrity and fair dealing which every client has a right to expect from the attorney to whom he entrusts his affairs. The fact, if it be true, that petitioner personally did not benefit by the loan to Arbuckle can afford little comfort to Bulmer who finds himself still liable on the judgment in favor of Murphy which could and should have been paid by the application of the money paid over to petitioner by the Spreckels Commercial Company. It follows that even if the money belonged to Bulmer personally, as claimed by petitioner, the facts are sufficient to prove petitioner's misconduct and the violation of his oath as an attorney.

However, the charge against petitioner was based upon the offense of misappropriating money to be held in trust for the payment of claims arising out of the dissolution of the partnership of Bulmer and Murphy. We do not agree with petitioner's argument that the money received by him from the Spreckels Commercial Company was money belonging to Bulmer rather than money which was to be held in trust to pay Murphy for his interest in the partnership. The agreement for the dissolution of the partnership expressly provided that the property conveyed by Murphy to Bulmer should be deemed to be held in trust for Murphy. Petitioner, as the author of said contract, could not possibly have been ignorant of the terms thereof. It follows that by the making of the unauthorized loan to Arbuckle, petitioner fraudulently appropriated said money to a use or purpose not in the due and lawful execution of his trust and was guilty of a violation of section 506 of the Penal Code.

Petitioner complains that both the order to show cause and the findings are indefinite and uncertain and do not clearly charge him with any offense. While the order to show cause and the findings are not beyond criticism, we think petitioner had no difficulty in determining the charge against him from the reading of the order to show cause, nor is there any real question as to the meaning of the findings as set forth in the record.

We are satisfied that the recommendation of the board of bar governors is just and proper.

It is therefore ordered that the petitioner, Ernest L. Seavey, be and he is hereby disbarred from the further practice of law in this state from and after the first day of August, 1935. and that his name be and it is hereby stricken from the roll of attorneys of the state of California, effective from and after said first day of August, 1935.