[L. A. No. 17287. In Bank.—January 22, 1940.]

In the Matter of the Application of BEN B. STEPSAY for Admission to Practice Law.

L. Arion Lewis, Jr., for Petitioner.

Philbrick McCoy for Respondent State Bar.

THE COURT.—Petitioner herein was admitted as an attorney at law in the State of Michigan in October, 1922, and practiced law continuously in the city of Detroit in that state for a period of thirteen years, until February, 1937, when due to the ill health of his son, he removed to the State of California. On May 27, 1938, he filed his application before the committee of bar examiners of the State Bar of California for registration as an attorney applicant for admission to practice law in this state. His application met all the requirements prescribed by the rules of the State Bar of California, and was accompanied by the fee required by law of attorney applicants. It came on for hearing before the committee of bar examiners on the 16th day of August, 1938, as to petitioner's moral character. Upon the conclusion of said hearing the committee denied the application of petitioner on the ground "that the applicant had failed to meet the burden of showing that he is possessed of the requisite good moral character and of removing reasonable doubt as to his moral fitness". Petitioner filed a petition for a rehearing of his application which was denied by the committee. Thereafter and on the 5th day of May, 1939, petitioner filed

a supplemental application for registration which was accompanied by fourteen letters addressed to the committee of bar examiners purporting to have been written by prominent judges and attorneys residing in Detroit, the former home of petitioner. This supplemental petition was also denied by the committee of bar examiners. Thereupon petitioner filed in this court the present petition asking that this court set aside said resolution of the committee of bar examiners denying petitioner's application, and for an order permitting him to take the next regular attorney's examination to be conducted by said committee. On presentation of said petition, this court made its order addressed to the State Bar of California to show cause why said petition should not be granted. The State Bar has made its return in which it has set forth the facts of the case substantially as narrated above. It will be seen therefrom that the sole ground for the denial of the application of petitioner for registration as an attorney applicant for admission to practice law in this state was that he "failed to meet the burden of showing that he is possessed of the requisite good moral character and removing reasonable doubt as to his moral fitness". ██ There is, of course, no question that one of the prerequisites to practice law in this state, and in all other jurisdictions, so far as we are advised, is the possession on the part of an applicant of a good moral character. In answer to a question contained in the questionnaire annexed to petitioner's application to the committee of bar examiners, in which petitioner was asked if any charges had ever been made or filed, or proceedings instituted against him, the petitioner replied, "None except those shown by affidavit of Miles H. Knowles, Secretary of Grievances, Third Judicial District, State Bar of Michigan, arising out of disputes for fees, and which were in all cases dismissed by Secretary of Detroit Bar Association without having been submitted to any grievance committee." In the affidavit of the secretary of the grievance committee referred to in petitioner's answer to the above question, it is stated that "three complaints were filed against petitioner for unprofessional conduct" and "that the said complaints were of a trivial nature, being dismissed by the Secretary of Grievances as not having sufficient importance to be referred to the Grievance Committee".

At the hearing before the committee of bar examiners held on August 16, 1938, the petitioner was the only witness. He was interrogated respecting the three complaints made against him to the grievance committee in Detroit. Nothing was developed by the evidence before the committee as to any of these complaints except as to the one made by Richard Mueller. As to that, the petitioner testified that he brought suit on a contingency basis for his client Mueller to collect for services rendered by the latter. The case was tried ·in the justice's court and resulted in a judgment in favor of petitioner's client. The case was appealed, but settled, and the defendant agreed to pay the amount due on a partial payment plan. Petitioner collected the entire amount and sent to his client all amounts due his client except the sum of $25. He wrote to his client that he was at the time unable to send him this balance due, but in a short time thereafter he mailed to his client a check for $25, the full amount due. The letter containing the check was returned as the client had moved. The letter with the check enclosed was retained by petitioner until he received a telephone call from the Bar Association regarding the matter. Petitioner immediately responded to the call and appeared personally before the association with the letter containing the check, which the secretary opened. The petitioner then paid the $25 due his client and no further action was taken respecting the complaint. This happened some two or three months after petitioner collected the money for Mueller. Petitioner testified that the Mueller instance was the only one during his entire practice in which he withheld funds belonging to any of his clients. Upon this evidence the committee of bar examiners adopted the resolution quoted above, denying petitioner's application to register as an attorney applicant to practice law in this state.

It is the contention of The State Bar that the offense of petitioner as shown by the above evidence was of such a serious nature that he should be forever barred from practicing law in this state. Without attempting to palliate petitioner's offense and with no desire to excuse him for this offense, we find ourselves unable to agree with the conclusion reached by the committee of bar examiners.

That petitioner violated his duty to his client in withholding the money for a period of two to three months cannot

be denied. An attorney's fidelity to his client is one of the highest duties growing out of the relation of attorney and client. Any deviation on the part of the former in the strict performance of his obligations has always met the severe censure of the courts. The withholding of money due a client by an attorney has been the moving cause of many disciplinary proceedings against offending attorneys in the courts of this state. Usually the penalty imposed for such offense is suspension from practice for periods varying from three months to two or three years. In *Barbee* v. *State Bar,* 213 Cal. 296 [2 Pac. (2d) 353], and *Goldstone* v. *State Bar,* 214 Cal. 490 [6 Pac. (2d) 513, 80 A. L. R. 701], the suspension was for three months; in *Smuckler* v. *State Bar,* 2 Cal. (2d) 80 [38 Pac. (2d) 777], and *Oster* v. *State Bar,* 2 Cal. (2d) 625 [42 Pac. (2d) 627], the suspension was for six months; in *Bentson* v. *State Bar,* 216 Cal. 58 [13 Pac. (2d) 512], and *Ring* v. *State Bar,* 4 Cal. (2d) 196 [47 Pac. (2d) 704], one year; in *McArthur* v. *State Bar,* 215 Cal. 652 [12 Pac. (2d) 453], eighteen months, and in *In re Tyler,* 71 Cal. 353 [12 Pac. 289, 13 Pac. 169], two years. It has only been in extreme cases that the court has felt called upon to disbar an attorney for such offense. (*Seavey* v. *State Bar,* 4 Cal. (2d) 73 [47 Pac. (2d) 281], *Allen* v. *State Bar,* 218 Cal. 19 [21 Pac. (2d) 107], and *Wilcox* v. *State Bar,* 2 Cal. (2d) 614 [42 Pac. (2d) 631].) But even in the Barbee and Goldstone cases where the suspension was for only three months, the offenses charged against the accused attorneys were far more serious than that against petitioner herein. It is true that the inquiry as to the moral character of an attorney in a proceeding for his admission to practice is broader in scope than in a disbarment proceeding. (*Spears* v. *State Bar,* 211 Cal. 183 [294 Pac. 697, 72 A. L. R. 923]; *In re Wells,* 174 Cal. 467 [163 Pac. 657]), and the court may properly refuse to admit an applicant to practice law upon proof which would not justify an order of disbarment. In the two cases in which this rule was announced each of the applicants was found guilty of a most flagrant offense and each was found to have made false statements either in his application or in affidavits in support thereof. While we are in accord with the rule there announced it can have but slight applicability in the instant case where the factual situation is so entirely different.

No claim is made that the petitioner did not fully, fairly and truthfully answer all questions propounded to him in the questionnaire annexed to his application. He was frank in all his statements before the committee of bar examiners at the hearing of his application and apparently attempted to conceal nothing from the committee. It is true that the burden of establishing good moral character was upon him. (*Spears* v. *State Bar, supra*), but, in our opinion, he met this burden not only by his open and frank testimony before the committee, but by the production before the committee of the letters from judges and attorneys above referred to. Nine of these letters are from judges of the circuit and other courts in the city of Detroit. One is from a lawyer who was the former employer of petitioner, and the others are from practicing attorneys in said city. They all speak in the highest terms of petitioner's honesty, integrity and good character. Some of the letters emphasize his courtesy and patience while others speak of "the esteem of his colleagues and of the bench". These letters are entitled to a most respectful consideration by this court when passing upon petitioner's moral fitness to practice law in this state. In the case of *Warbasse* v. *State Bar*, 219 Cal. 566, 571 [28 Pac. (2d) 19], similar letters were before this court, and the question for its decision was the moral character of the petitioner in that proceeding who sought to be admitted to practice law in this state. Referring to such letters, the court said: "There has been filed by petitioner letters of recommendation from judges, attorneys and business men. Most of the letters are from judges of the Appellate Division, Second Department, of the Supreme Court, the court which suspended him. Although the number of letters is not unduly large, they are from persons whose position indicate that they possess a real sense of responsibility for the integrity of the legal profession, and who, therefore, would not be induced by reasons of friendship, or any reason other than a sincere belief in his honesty and integrity, to recommend him for admission to our bar. The letters attest petitioner's ability, his wide experience and the worth of his character. We believe that the writers thereof were giving an honest estimate of his character and that we may unqualifiedly accept that estimate."

These letters filed with the commission in the present proceeding taken in connection with petitioner's truthful answers to the questions contained in the questionnaire, although one of them referred to the complaints made against him before the Detroit grievance secretary, and the full and complete disclosure made by petitioner before the committee respecting these complaints are indicative of petitioner's real character. We are satisfied that they are a more truthful index to his real character than the one isolated offense which it is apparent he committed during his thirteen years of active practice of law. In view of the showing thus made by petitioner we are of the opinion that his petition herein should be granted.

It is therefore ordered that petitioner be permitted to take the next regular attorney's examination to be conducted by the committee of bar examiners of the State Bar of California, and to take such other steps as may be required to entitle him to be admitted to practice law in this state.